**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 17, 2024**

# In the Court of Appeals of Georgia

A24A1345. ADAMS v. LEE et al.

BROWN, Judge.

Martha Adams appeals the grant of summary judgment in favor of her granddaughter and the granddaughter's husband, Jessica and Jason Lee, on Adams' claim for personal injuries stemming from a slip and fall at the Lees' home. Adams contends that the trial court erred in concluding that she was a licensee at the home. For the reasons discussed below, we reverse.

"On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law."

*Behforouz v. Vakil*, 281 Ga. App. 603 (636 SE2d 674) (2006). So viewed, the evidence shows that Adams broke her femur when she slipped and fell on water in the dining room of the Lees' rental home in August 2015. The Lees had invited Adams to their home to care for their two-year-old son while Jason went to work and Jessica attended training for work. Adams had arrived the night before, eaten dinner with the family, and then spent the night. At the time of the accident, Adams had put down her great-grandson for a nap, and was walking to open the door for her son who had come to visit, when she slipped on rainwater that had leaked into the home. According to Adams, she did not pay the Lees to stay at their home or accept compensation from them to care for her great-grandson.

The Lees had been living in the home since 2012, and had complained to the management company about leaks since at least 2013, but nothing was ever done. They placed pots around the home to catch the water and were told that the roof needed to be replaced. Jessica testified that she told Adams the home leaked, but never showed Adams where the leaks occurred or told her to be careful when it rained. Adams testified that she had no idea the home had a recurring problem with leaks and

had never been warned about the water. It was not raining and there was no water in the dining room when the Lees left to go to work.

Adams sued the Lees and several other defendants for her personal injuries. The Lees moved for summary judgment, which the trial court granted, finding that Adams was a licensee at the Lees' home at the time of her fall. Specifically, the trial court concluded that at the moment of her fall, Adams was "acting for her own interests and not mutual benefit, when she fell. . . . More importantly, at the time of the fall, [Adams] was furthering her own personal interests and was engaged in crossing the room to greet her son . . . who arrived at the back door for a visit with her." The trial court alternatively concluded that the primary purpose of Adams'

> presence was a social visit between a grandmother and her extended family. And even though [Adams] was present alone with the [Lees'] child when the fall occurred, this situation does not automatically convert the relationship between [Adams] and [the Lees] from licensee and host to invitee and property owner . . . . Instead, [Adams] was primarily at the home as a guest to see her family instead of serving as the caretaker of the child while [the Lees] were at work.

Adams appeals this ruling, contending that the trial court erred in concluding that she was a licensee and that the trial court should not have granted summary judgment in favor of the Lees because issues of fact remain.

> The elements of legal liability of the owner or proprietor of premises for injuries occasioned to persons thereon, vary according to whether the person injured was, at the time of the injury, a trespasser, a licensee, a visitor under invitation, express or implied, or a person standing in some special relation recognized by law. The owner or proprietor of premises is liable to a licensee only for wilful or wanton injury. As to an invitee, the owner or proprietor owes the duty to exercise ordinary care.

(Citations and punctuation omitted.) *Frankel v. Antman*, 157 Ga. App. 26, 27 (276 SE2d 87) (1981). See also OCGA §§ 51-3-1, 51-3-2. Determining whether a person is an invitee or licensee

> depends upon the nature of his relation or contact with the owner or tenant of the premises. If the relation solely benefits the person injured, he is at most a licensee. If, on the other hand, the relation was of mutual interest to the parties, he is an invitee. While the mutuality of interest required to render a person an invitee does not necessarily contemplate mutual economic or monetary advantage, the legal status of a mere social guest is, nevertheless, that of a licensee. And the fact that incidental services are performed by the guest during the course of his visit does

4

not make him an invitee. But if the primary purpose of the visit is to perform services for the host or services mutually beneficial to host and guest, the legal status of the visitor is that of an invitee.

(Citation and punctuation omitted.) *Stanton v. Griffin*, 361 Ga. App. 205, 207 (1) (863 SE2d 548) (2021).

Adams contends that her purpose for being at the Lees' home was to care for her two-year-old great-grandson, and that at the time of her fall she was the sole individual at the home caring for the child; that Adams' son arrived to visit his mother did not change the character of Adams' obligations at her granddaughter's home. Accordingly, her status was that of an invitee and not a licensee and the trial court erred in finding otherwise. We agree that Adams was an invitee because the primary purpose of her visit was to care for her two-year-old great-grandson while the Lees went to work. At the very least, the record supports a finding that both parties received a benefit from Adams' visit. The Lees received help with their two-year-old son while they were both at work and Adams was able to visit with the Lee family and see her son. That Adams was walking to answer the door for her son at the exact moment she fell does not alter the fact that she was the sole caretaker for the Lees' two-year-old son. It follows, therefore, that Adams' status in this case was that of an

invitee and that the trial court erred in concluding that she was a licensee and granting summary judgment to the Lees on that basis. See *Ballard v. Burnham*, 256 Ga. App. 531 (568 SE2d 743) (2002) (plaintiff, who babysat for her granddaughter for compensation, was an invitee in her daughter and son-in-law's home when she slipped on a coin on the floor). Compare *Knisely v. Gasser*, 198 Ga. App. 795, 797-798 (2) (403 SE2d 85) (1991) (where plaintiffs were at defendants' home solely for their own convenience so that plaintiffs would not have to drive home after attending a wedding reception, injured plaintiff was licensee at time of fall).

The primary case upon which the trial court relied in granting summary judgment to the Lees is distinguishable because in that case, the main purpose of the plaintiff's visit to her parents' home was for her own convenience. See *Behforouz*, 281 Ga. App. at 604 (affirming grant of summary judgment to defendant parents because the record revealed that the primary purpose of the plaintiff's visit to her parents' home was to pick up her son, "for her own convenience and gratification"). See also *Riley v. Brasunas*, 210 Ga. App. 865, 866-867 (1) (438 SE2d 113) (1993) (affirming grant of summary judgment to defendants where plaintiffs — out-of-town guests of

6

defendants — were social guests of defendants and therefore licensees). In this case, the primary purpose of Adams' visit to the Lees' home was for their convenience.

Moreover, as an invitee, the Lees owed the duty to exercise ordinary care. As the evidence is disputed as to whether the Lees warned Adams about the condition of the home, the trial court erred in concluding that Adams cannot prove that the Lees failed to meet the standard of care owed to her. See *Atkins v. Tri-Cities Steel*, 166 Ga. App. 349, 350 (304 SE2d 409) (1983) ("[a]n owner or occupier of land is liable when he fails to warn his invitees of dangers or defects of which he knew or should have known had he exercised ordinary care") (physical precedent only).

*Judgment reversed. Dillard, P. J., and Padgett, J., concur.*